UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MIR ISLAM,

                          Petitioner,

    v.

UNITED STATES OF AMERICA,

                          Respondent.
-----------------------------------------------------------X

18-CV-735 (KMW)
12-CR-810 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Petitioner Mir Islam moves to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, alleging that (1) his plea was involuntary because, at the time of his plea, he was not taking his prescribed psychotropic medications; (2) he received ineffective assistance of counsel; and (3) the Government falsely asserted he was subject to a federal detainer issued by the United States District Court for the District of Columbia.[1]

For the reasons stated herein, his motion is DENIED.

I. **BACKGROUND**

On October 24, 2012, the Government filed an Information charging Islam with committing and attempting to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(3), (b)(1), and (2).  (ECF No. 10.)[2]  Islam waived his right to an indictment.  (ECF No. 11.)  On May 28, 2013, the Government filed a superseding Information; Islam again waived his right to an indictment, and Islam pleaded guilty to the superseding Information. (ECF Nos. 32 & 33.)[3]  On March 7, 2016, Islam was sentenced to one day in custody and three

---

[1] Islam originally raised six arguments in his § 2255 petition, but he withdrew three arguments in his reply.
[2] All ECF citations are to the criminal docket, *United States v. Islam*, 1:12-cr-810-KMW.
[3] On July 5, 2015, Islam pleaded guilty to a three-count information in the District Court for the District of Columbia.  Islam was sentenced to twenty-four months of incarceration after that guilty plea.

years of supervised release. (ECF No. 34.)

In January 2017, this Court issued an arrest warrant for Islam based on alleged violations of the conditions of his supervised release. (ECF No. 39.) Separately, on February 1, 2017, Judge Moss in the District Court for the District of Columbia issued a warrant to be "lodged as a detainer" against Islam, for his alleged violations of supervised release in his District of Columbia case. (Gov't Opp'n, Ex. B, at 1.)

On March 12, 2017, Islam wrote to this Court stating his intention to plead guilty to three of the violations specified by the Probation Office, but requesting an alternative sentence to an inpatient psychiatric facility for thirty days. (*Id.*, Ex. C, at 1–2.) The following day, Islam pleaded guilty under oath and confirmed that his mind was "completely clear." (*Id.*, Ex. D, at 3.) This Court adjourned sentencing until April 4, 2017 so that Islam's counsel, Richard Palma, would have an opportunity to identify a psychiatric facility to which Islam could be committed, as an alternative to incarceration. (*Id.* at 4–5.)



On April 4, 2017, Islam appeared before the Court and requested new counsel. (*Id.*, Ex. G, at 2.) The Court then replaced Palma with Joshua Paulson and adjourned sentencing until April 11, 2017. (*Id.* at 5.)

On April 11, 2017, the Court sentenced Islam to twenty-four months of incarceration

followed by one year of supervised release. (*Id.*, Ex. H, at 12.) The Court based its sentence on "the egregiousness of Specifications 2 and 3," to which Islam pleaded guilty. (*Id.*) Those specifications related to Islam's travel to Maryland and his failure to abide by the special conditions of computer monitoring. (*Id.*) The Court noted that the restriction on possession of additional Internet-capable devices was "a very important condition of [Islam's] supervised release." (*Id.*) Initially, the Court ordered that Islam's twenty-four month sentence was to run concurrently with any sentence imposed by the District Court for the District of Columbia. The Court rescinded its order and replaced it with a recommendation, after the Government asserted that the Court did not have the authority to run its sentence concurrent to a sentence that had not yet been imposed. (*Id.* at 15–16.)

Islam did not appeal his sentence. On August 17, 2017, Islam completed the term of custody imposed by this Court. (*Id.*, Ex. I, at 5.) Islam was thereafter transferred to the District of Columbia. (*Id.*) After his incarceration in the District of Columbia concluded, Islam began supervised release in this district on May 18, 2018. On August 27, 2018, this Court signed a sealed arrest warrant for Islam because of alleged subsequent violations of the conditions of his supervised release. Islam is currently at liberty.

Islam filed the present § 2255 petition on January 25, 2018. (Pet'r's Mot., ECF No. 65) Islam makes three arguments. First, Islam argues his guilty plea for violations of the conditions of his supervised release was not voluntary. (*Id.* at 2–3.) Second, Islam contends Palma was ineffective in his representation during the violation proceedings because: (1) Palma did not allow Islam to claim his innocence to the Court; and (2) Palma did not pursue a psychological evaluation to determine whether it would be appropriate for Islam to enter a psychiatric facility rather than be incarcerated. (*Id.* at 4–5.) Third, Islam alleges the Government falsely stated Islam was subject to a federal detainer. (*Id.* at 12–13.)

3

## II. Legal Standard

### A. 28 U.S.C. § 2255

A prisoner in federal custody may "move the court which imposed [his] sentence to vacate, set aside or correct the sentence" if the "sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To succeed, a § 2255 petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*. 368 U.S. 424, 428 (1962)). "The petitioner in a § 2255 proceeding bears the burden of proof by a preponderance of the evidence." *Feliz v. United States*, No. 1-CV-5544 (JFK), 2002 WL 1964347, at *4 (S.D.N.Y. Aug. 22, 2002) (Keenan, J.) (citing *Triana v. United States*, 205 F.3d 40 (2d Cir. 2000)).

## III. DISCUSSION

### A. Voluntariness of a Plea (Claim 1)

#### 1. Legal Standard

"[I]f a defendant's guilty plea is not . . . voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (internal quotation marks omitted). A petitioner cannot withdraw a guilty plea, however, where "there is no evidence to support [its withdrawal] and it is contradicted by the record of the petitioner's plea allocution." *McNaught v. United States*, 646 F. Supp. 2d 372, 382 (S.D.N.Y. 2009); *see also United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to

4

withdraw the guilty plea." (quoting *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (internal quotation marks omitted)).

### 2. Application

Islam contends that his plea was involuntary because he "was not on any of his psychotropic medications" during the entry of his plea and during sentencing. (Pet'r's Mot. at 2–3.) At his plea hearing, however, Islam testified that his mind was "completely clear." (Gov't Opp'n, Ex. D, at 3.) Moreover, apart from the bald assertion that his plea was involuntary, Islam does not offer any evidence to support his argument. This assertion, which simply contradicts what Islam said at his plea allocution, is not sufficient to demonstrate that Islam's plea was involuntary. Accordingly, Claim 1 is DENIED.

### B. Effective Assistance of Counsel (Claim 2)

#### 1. Legal Standard

To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), by showing both (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that counsel's deficient performance prejudiced" the petitioner. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (internal quotation marks omitted).

Prevailing on a *Strickland* claim is not easy. "To give appropriate deference to counsel's independent decisionmaking," courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (internal quotation marks and citation omitted). Similarly, in establishing prejudice in satisfaction of the second prong of *Strickland*, a petitioner bears a "heavy burden." *Strickland*, 466 U.S. at 692. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually

every act or omission of counsel would meet that test." *Id.* at 693. Rather, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### 2. Application

Islam contends Palma was ineffective during the violation proceedings because: (1) Palma did not allow Islam to assert his innocence to the Court, despite Islam informing Palma that he was innocent; and (2) Palma did not attempt to obtain a psychiatric evaluation for Islam, which Islam argues would have allowed him to be placed in an inpatient psychiatric facility as an alternative to incarceration. (Pet'r's Mot. 4–5.)

Islam cannot establish his first claim of ineffective assistance. As an initial matter, Islam's argument is supported only by his own self-serving and conclusory allegations, which do not entitle him to relief. *See Rollins v. United States*, 15-CV-7154 (WHP), 2017 WL 980330, at *1 (S.D.N.Y. Mar. 13, 2017) (Pauley, J.) ("[S]elf-serving, conclusory allegations are insufficient to establish ineffective assistance of counsel" (citing *Torres*, 129 F.3d at 715–17)); *see also Diaz v. United States*, 16-CV-6710 (JMF), 2017 WL 112609, at *1 (S.D.N.Y. Jan. 11, 2017) (Furman, J.) (rejecting ineffective assistance claims where the petitioner offered only "conclusory assertions and generalizations to support the claims," including that counsel forced the petitioner to plead guilty). Evidence in the record also contradicts Islam's belated assertion of innocence. During his plea allocution, Islam swore he was guilty. (Gov't Opp'n, Ex. D, at 3–4, 6–7.) Islam's bare assertion of innocence in his § 2255 petition does not overcome his sworn statements at his plea hearing. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (concluding that statements during plea allocutions "constitute a formidable barrier in any subsequent collateral proceedings" because statements "in open court carry a strong presumption of verity"

and later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible"). Islam also repeatedly admitted he violated his conditions of supervised release in written submissions to this Court. (*See, e.g.*, Gov't Opp'n, Ex. E; Gov't Opp'n, Ex. C.) Finally, given the extent and nature of Islam's direct communications with the Court—including instances in which Palma submitted to the Court letters from Islam—it is not credible that Palma prevented Islam from asserting his innocence.

Islam cannot establish his second claim of ineffective assistance, because the record shows that Palma did, in fact, seek to obtain a psychiatric evaluation for Islam. On March 12, 2017, Palma provided the Court with a letter from Islam requesting that he be placed in an inpatient facility in lieu of incarceration. (Gov't Opp'n, Ex. C.) ███████ ███████████████████████████████████████ On this record, *contra* what Islam says, Palma attempted to obtain psychiatric evaluation and treatment for Islam.

For the above reasons, Claim 2 is DENIED

### C. Federal Detainer (Claim 3)

Islam claims that his sentence should be altered because, during sentencing, the Government misled the Court into believing that Islam was "subject to a federal detainer." (Pet'r's Mot. at 12.) Islam argues the Court could have imposed an alternate sentence, such as "30 days' home confinement," if it knew he was not subject to a detainer at the time of sentencing. (*Id.*) The record shows, however, that the District Court for the District of Columbia issued a detainer for Islam on February 1, 2017. (Gov't Opp'n, Ex. B.) Thus, on

7

April 12, 2017, when the Court sentenced Islam, it was true that he was subject to a federal detainer.

Accordingly, Claim 3 is DENIED.

## IV. CONCLUSION

For the reasons stated above, Islam's § 2255 motion is DENIED. The Court also denies Islam's request for a hearing on these issues. *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (concluding that an evidentiary hearing is not warranted where the allegations are "vague, conclusory, or palpably incredible" (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962))). A certificate of appealability will not issue because Islam has failed to make a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253. The Clerk of Court is directed to close this case; all pending motions are moot.

SO ORDERED.

Dated: New York, New York
December 11, 2018

KIMBA M. WOOD
United States District Judge